532 S.E.2d 16

### STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent,

v.

### Dorothy C. GUNNING, individually and as Personal Representative of the Estate of David B. Gunning, deceased, Appellant.

### No. 3171.

Court of Appeals of South Carolina.

Heard Feb. 10, 2000.

Decided May 22, 2000.

Rehearing Denied July 22, 2000.

---

Robert P. Foster, of Foster & Foster, of Greenville, for appellant.

William W. Kehl, of Wyche, Burgess, Freeman & Parham, of Greenville, for respondent.

HOWARD, Judge:

David Gunning was killed when the motorcycle he was operating collided with a motor vehicle. State Farm Mutual Automobile Insurance Company (State Farm) brought this declaratory judgment action to determine the amount of underinsured motorist (UIM) coverage afforded on policies covering two vehicles owned by Gunning which were not involved in the accident. State Farm paid $15,000 from each of the two policies, denying any further payment even though each policy carried underinsured motorist coverage of $100,000 per person, not to exceed $300,000 per accident. The trial court granted State Farm's motion for summary judgment, holding State Farm owed no further coverage on the non-involved vehicle policies. We affirm.

## FACTS

The following facts were stipulated by the parties for purposes of this action. Gunning's motorcycle was struck by a vehicle driven by Paul Tiano. Tiano was at fault in the collision. Tiano was insured under a policy which provided liability coverage with limits of $15,000 per person, not to exceed $30,000 per accident. State Farm insured Gunning's motorcycle under a policy which provided liability coverage with limits of $15,000 per person, not to exceed $30,000 per accident. The policy contained no UIM coverage. In addition, Gunning and his wife owned two vehicles, both of which were separately insured with State Farm. Each had identical coverage, including UIM, of $100,000 per person, not to exceed $300,000 per accident.

Mrs. Gunning settled with Tiano's liability insurance carrier for the policy limit of $15,000. She then filed claims with State Farm on the policies providing UIM coverage on the two non-involved vehicles. State Farm paid $30,000, representing $15,000 from each of the two policies. State Farm denied further payment because each policy contained a provision limiting available UIM coverage to basic limits where the insured was driving an owned vehicle which did not provide UIM coverage.

State Farm then brought this action to declare that no further UIM coverage was available under the policies. The parties filed cross-motions for summary judgment. The trial court granted State Farm's motion, holding that State Farm owed no further UIM coverage. This appeal follows.

## DISCUSSION

 South Carolina Code Annotated Section 38-77-160 governs the application of UIM coverage and provides in pertinent part as follows:

Automobile insurance carriers shall offer ... at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute. *If, however, an insured or named*

*insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident.*

S.C.Code Ann. § 38–77–160 (Supp.1999) (emphasis added). This statutory provision applies to every policy as if embodied therein, and inconsistent insurance policy provisions are void. *See Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S.E.2d 723 (1984). Accordingly, the insurance policy provisions for non-involved vehicles which restrict available UIM coverage to basic limits if the insured is driving an owned vehicle having no UIM coverage are enforceable if not inconsistent with section 38–77–160 and the public policy supporting the Financial Responsibility Act.

Gunning first argues that this case is controlled by *McAlister v. State Farm Mut. Auto. Ins. Co.*, 301 S.C. 113, 390 S.E.2d 383 (Ct.App.1990). In *McAlister*, this Court held the insurer's attempt to contractually restrict UIM coverage contravened public policy supporting the Financial Responsibility Act under facts similar to those here. However, the applicability of the statutory predecessor to section 38–77–160 was not considered by the court in *McAlister* because the issue was not preserved for appeal. Consequently, *McAlister* is not controlling.

In this case, the circuit court interpreted section 38–77–160 to "clearly limit the amount of coverage which can be stacked from policies on vehicles not involved in an accident to an amount no greater than the coverage on the vehicle involved in that accident," citing *Nationwide Mut. Ins. Co. v. Howard*, 288 S.C. 5, 11, 339 S.E.2d 501, 504 (1985) and *South Carolina Farm Bureau Mut. Ins. Co. v. Mooneyham*, 304 S.C. 442, 446, 405 S.E.2d 396, 398 (1991). The circuit court also relied on *Ohio Cas. Ins. Co. v. Hill*, 323 S.C. 208, 473 S.E.2d 843 (Ct.App.1996), a factually similar case in which this Court addressed the effect of section 38–77–160 on stacking UIM coverage from an "at home" vehicle.

In *Ohio Cas. Ins. Co.*, Hill was injured when operating a motorcycle with no UIM coverage. Hill owned two "at home" vehicles covered under a policy which provided UIM coverage for each vehicle with limits of $25,000 per person, not to

exceed $50,000 per accident. In exchange for a partial release, Hill recovered $25,000 pursuant to the UIM provisions of the policy covering the non-involved vehicles. A declaratory judgment action was brought to determine whether an additional $25,000 in UIM coverage could be stacked.

This Court held that Hill could not stack the UIM coverage from the second "at home" vehicle because section 38–77–160 limits the amount of coverage an insured may stack from a policy on a non-involved vehicle to an amount no greater than the UIM coverage on the vehicle involved in the accident. As Hill had no UIM coverage on the motorcycle involved in the accident, he was not entitled to stack any UIM coverage from the "at home" vehicle.

In *Continental Ins. Co. v. Shives,* 328 S.C. 470, 492 S.E.2d 808 (Ct.App.1997), this Court again addressed a factually similar situation. Shives was injured while riding a bicycle. At the time of the accident, Shives was a named insured on a policy issued by Continental which provided up to $500,000 in UIM coverage on two non-involved vehicles. Continental paid Shives $500,000 in UIM benefits. Shives asserted that he was entitled to stack an additional $500,000 in UIM benefits. This Court first addressed Shives' insured status, noting that a Class I insured, defined as an insured or named insured that has a *vehicle* involved in the accident, could stack coverage. To resolve the issue of Shives' status, the court reasoned that it was necessary to determine whether a bicycle was a vehicle. However, the trial judge had already ruled that a bicycle was not a vehicle, and that ruling was not appealed. Consequently, that ruling was the law of the case. As such, Shives was not a Class I insured, because he was not operating a vehicle. This precluded Shives from stacking additional UIM coverage. Notably, however, the court additionally stated:

[e]ven if the bicycle is a vehicle under section 38–77–160, Shives cannot stack additional UIM coverage because an insured can stack UIM coverage only in an amount equal to the UIM coverage on the vehicle involved in the accident. Because there was no UIM coverage on the bicycle, Shives cannot stack.

*Continental Ins. Co.,* 328 S.C. at 474, 492 S.E.2d at 811.

Mrs. Gunning attempts to distinguish these cases by pointing out that in each the limit of UIM coverage was available to

the insured on either the vehicle involved in the accident or the first "at home" vehicle. She contends those cases involved an actual issue of stacking, whereas she has yet to recover the limit of UIM coverage from any of the applicable policies.

However, as the circuit court determined, the clear language of section 38–77–160 applies to limit the extent of excess UIM coverage available in each circumstance where an insured seeks recovery of UIM benefits from a policy covering a non-involved vehicle. It clearly states that where an insured has UIM coverage in excess of the basic limits, the insured is limited to the amount of coverage on the vehicle involved in the accident. Mr. Gunning's motorcycle involved in the accident had no UIM coverage. Therefore, excess UIM coverage from the non-involved vehicles is unavailable to Gunning. The policy language relied upon by State Farm to deny additional UIM coverage is consistent with the terms of section 38–77–160, and is valid.

As to Mrs. Gunning's two remaining arguments, we find them to be manifestly without merit.

For the foregoing reasons, the decision of the circuit court is

**AFFIRMED.**

CURETON and HUFF, JJ., concur.