603 S.E.2d 861

**Robert J. BURGESS, Respondent,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant.**

**No. 3863.**

Court of Appeals of South Carolina.

Heard April 6, 2004.
Decided Sept. 7, 2004.
Rehearing Denied Oct. 21, 2004.

Robert C. Brown, of Columbia, for Appellant.

Kristi F. Curtis, of Sumter, and Nelson R. Parker, of Manning, for Respondent.

BEATTY, J.

Robert J. Burgess brought a declaratory judgment action against Nationwide Mutual Insurance Company seeking a declaration that he was entitled to underinsured motorist coverage. The trial judge granted declaratory relief and found Burgess was entitled to UIM coverage in the amount of $15,000. Nationwide appeals. We affirm as modified.

## FACTS[1]

Burgess was operating his 1986 Honda motorcycle when a car driven by Angelo T. Heyward struck him. Heyward carried automobile liability insurance on his car with New Hampshire Indemnity Company. Burgess collected $15,000 of liability coverage from New Hampshire Indemnity and agreed to a covenant not to execute with Heyward.

Burgess had a liability policy on his motorcycle with Alpha Property and Casualty Insurance, but the policy did not provide any underinsured motorist ("UIM") coverage. In addition to the motorcycle, Burgess also owned three vehicles that were covered by Nationwide Mutual Insurance Company ("Nationwide"). That policy provided UIM coverage of $25,000 per person. The Uninsured and Underinsured Motorist Endorsement provided that:

> If a vehicle owned by you or a relative is involved in an accident where you or a relative sustains bodily injury or property damage, this policy shall: a) be primary if the involved vehicle is your auto described on this policy; or b) be excess if the involved vehicle is not your auto described on this policy. The amount of coverage applicable under this policy shall be the lesser of the coverage limits under this policy or the coverage limits on the vehicle involved in the accident.

Because the motorcycle was not listed under Nationwide's policy, Nationwide refused to pay Burgess, arguing that the motorcycle did not have any UIM coverage.

Burgess moved for declaratory judgment. He argued that he was entitled to $15,000 of UIM coverage from the Nationwide policy that covered his "at-home" vehicles. Nationwide

---

1. The parties stipulate these facts.

countered it should not be required to pay any UIM benefits because Burgess had more than the basic amount of UIM coverage and the vehicle involved in the accident had none. Nationwide also argued that its UM/UIM endorsement excludes coverage under these circumstances. The trial judge granted declaratory relief to Burgess in the amount of $15,000.

## ISSUES

I. Did the trial court err in finding Burgess was entitled to UIM coverage in an amount equal to the liability coverage on the Honda motorcycle involved in the accident under the Nationwide policy?

II. Did the trial court err in finding that Burgess was entitled to UIM coverage under S.C.Code Ann. § 38–77–160?

III. Did the trial court err in finding that Burgess was entitled to coverage under Nationwide's policy?

## STANDARD OF REVIEW

Whether a suit for declaratory judgment is legal or equitable is determined by the nature of the underlying issue. *Auto-Owners Ins. Co. v. Horne*, 356 S.C. 52, 56, 586 S.E.2d 865, 867 (Ct.App.2003) (citing *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991)). "An action to determine coverage under an insurance policy is an action at law." *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 344 S.C. 525, 528, 544 S.E.2d 848, 849 (Ct.App.2001). In an action at law, tried without a jury, the appellate court will not disturb the trial court's findings of fact unless they are found to be without evidence that reasonably supports those findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). However, when an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts. *In re Estate of Boynton*, 355 S.C. 299, 301, 584 S.E.2d 154, 155 (Ct.App.2003). In such a situation, the appellate court does not have to defer to the trial court's findings. *Id.*

## LAW/ANALYSIS

■ There is a great division of authority as to coverage for damages arising out of accidents involving owned but not insured vehicles. In some jurisdictions, UIM coverage follows the person; in others it follows the vehicle. We believe that South Carolina falls in the category where UIM coverage follows the person, as is the case with uninsured motorist ("UM") coverage.

UIM insurance is a variant of UM insurance. 9 *Couch on Ins.*3d § 122:3 (2004). In some jurisdictions, UIM is referred to as supplemental uninsured coverage. *Id.* South Carolina courts have often analogized UM and UIM, especially when discussing the application and interpretation of section 38–77–160 of the South Carolina Code (2002), which deals with UM and UIM coverage.[2] Therefore, our appellate courts' treatment of UM is instructive in this case.

The purpose of the UM statute is "to provide benefits and protection against the peril of injury or death by an uninsured motorist to an insured motorist, his family, and the permissive users of his vehicle." *Ferguson v. State Farm Mut. Auto. Ins. Co.*, 261 S.C. 96, 100, 198 S.E.2d 522, 524 (1973). The statute "is remedial in nature, enacted for the benefit of injured persons, and is to be liberally construed so that the purpose intended may be accomplished." *Gunnels v. American Liberty Ins. Co.*, 251 S.C. 242, 247, 161 S.E.2d 822, 824 (1968).

Our supreme court has previously explained, "uninsured motorist coverage is not to provide coverage for the uninsured vehicle but to afford additional protection to the insured." *Nationwide Mut. Ins. Co. v. Howard,* 288 S.C. 5, 12, 339 S.E.2d 501, 504 (citing *Hogan v. Home Ins. Co.,* 260 S.C. 157, 162, 194 S.E.2d 890, 892 (1973)). The court further clarified in *Hogan* that "unlike the provisions relative to liability coverage, the statute plainly affords uninsured motorist coverage to the named insured and resident relatives of his or her household at all times and without regard to the activity in which they were engaged at the time. Such coverage is nowhere limited

---

**2.** *See McAlister v. State Farm Mut. Auto. Ins. Co.,* 301 S.C. 113, 390 S.E.2d 383 (1990); *Nationwide Mut. Ins. Co. v. Howard,* 288 S.C. 5, 339 S.E.2d 501 (1985).

in the statute to the use of the insured vehicle." *Hogan,* 260 S.C. at 162, 194 S.E.2d at 892.

■ Similarly, the statutory purpose of UIM coverage is to provide coverage in the event damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured. S.C.Code Ann. § 38–77–160. Thus, our UIM statute is also remedial in nature and enacted for the benefit of injured persons. It should be construed liberally to effect the purpose intended by the legislature. *See Sloan v. Greenville County,* 356 S.C. 531, 564, 590 S.E.2d 338, 356 (Ct.App. 2003) (reasoning that the provisions of a code should be construed liberally if the code is remedial in nature).

■ Understanding that UIM coverage is a variation of UM coverage, we believe that *Hogan* indicates the legislative intent behind our UIM statute and is applicable here. In other words, *under* insurance, like *un* insurance, is personal and portable. "In jurisdictions where the coverage follows the person any person who enjoys the status of an insured under a motor vehicle policy of insurance which includes uninsured/underinsured coverage enjoys coverage protection simply by reason of having been injured by an uninsured/underinsured motorist." 9 *Couch on Ins.*3d § 123:3.[3]

### *S.C.Code Ann. § 38–77–160*

■ The proper interpretation of section 38–77–160 is central to the resolution of the issues in this case. That section deals with UM and UIM and states:

Automobile insurance carriers shall offer, at the option of the insured, uninsured motorist coverage up to the limits of the insured's liability coverage in addition to the mandatory coverage prescribed by section 38–77–160. Such carriers

---

3. South Carolina appears to share the majority view. *See DeHerrera v. Sentry Ins. Co.* 30 P.3d 167 (Colo.2001); *Honeycutt v. Walker,* 119 N.C.App. 220, 458 S.E.2d 23 (1995) *review denied,* 342 N.C. 192, 463 S.E.2d 236 (1995); *Dines v. Pacific Ins. Co.,* 78 Hawai'i 325, 893 P.2d 176 (1995), *recons. denied,* 78 Hawai'i 474, 896 P.2d 930 (1995); *Smith v. Nationwide Mut. Ins. Co.,* 328 N.C. 139, 400 S.E.2d 44 (1991), *reh'g denied,* 328 N.C. 577, 403 S.E.2d 514 (1991); *Howell v. Balboa Ins. Co.,* 564 So.2d 298 (La.1990); *see also State Farm Mut. Auto. Ins. Co. v. Jackson,* 462 So.2d 346 (Ala.1984), *later proceeding,* 757 F.2d 1220 (11th Cir.Ala.1985).

shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute. *If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident.* If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage.[4]

(Emphasis added).

Nationwide argues that the emphasized language excludes basic UIM coverage in situations where the vehicle involved in a collision is owned by the insured but is not specifically covered in a UIM policy. We disagree.

The emphasized language has been interpreted or discussed on numerous occasions by our appellate courts.[5] Several of those cases involved facts very analogous to the case *sub-judice*.[6] However, none of them has directly addressed the question we face today, that is whether or not section 38–77–160 and public policy allow the exclusion of basic UIM cover-

---

4. There is no requirement that an insurer offer UIM coverage in an amount less than the statutorily required bodily injury or property damage limits. S.C.Code Ann. § 38–73–470 (Supp.2002); *Moody v. Dairyland*, 354 S.C. 28, 28, 579 S.E.2d 527, 529 (Ct.App.2003). The statutorily required minimum bodily injury amount is $15,000. *See* S.C.Code Ann. § 38–77–140 (Supp.2002).

5. *See Concrete Services v. U.S. Fidelity*, 331 S.C. 506, 498 S.E.2d 865 (1998); *South Carolina Farm Bureau Mut. Ins. Co. v. Mooneyham*, 304 S.C. 442, 405 S.E.2d 396 (1991); *Howard; Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S.E.2d 723 (1984); *Gambrell v. Travelers Ins. Cos.*, 280 S.C. 69, 310 S.E.2d 814 (1983); *State Farm Mut. Ins. Co. v. Gunning*, 340 S.C. 526, 532 S.E.2d 16 (Ct.App.2000); *Ohio Cas. Ins. Co. v. Hill*, 323 S.C. 208, 473 S.E.2d 843 (Ct.App.1996).

6. *See McAlister; Gunning; Continental Ins. Co. v. Shives*, 328 S.C. 470, 492 S.E.2d 808 (Ct.App.1997); *Hill.*

age. Each of the cases addressed the issue of "stacking" UIM or UM coverage. Invariably, each of these cases found the emphasized language to apply to situations involving stacking. *See S.C. Farm Bureau Mut. Ins. Co. v. Mooneyham,* 304 S.C. 442, 445, 405 S.E.2d 396, 398 (1991) ("[W]e interpret the pertinent language of the statutes as setting a cap on the amount which can be stacked ...."). In each case the insurer made an initial payment of at least the basic UIM/UM coverage and only litigated additional UIM/UM payments.

To address the issue of basic coverage, we must consider section 38–77–160 in its entirety, not just the isolated emphasized portion argued by Nationwide. *See Beattie v. Aiken County Dep't of Soc. Servs.,* 319 S.C. 449, 452, 462 S.E.2d 276, 278 (1995) ("An entire code section should be read as a whole so that phraseology of isolated section is not controlling."). Additionally, "[o]ne of the primary rules in a construction of a statute is that the words used therein should be taken in the ordinary and popular significance, unless there is something in the statute requiring a different interpretation." *Gambrell,* 280 S.C. at 73, 310 S.E.2d at 817. A subtle or forced construction of words in a statute for the purpose of expanding the operation of the statute is prohibited. *See Moon v. City of Greer,* 348 S.C. 184, 188, 558 S.E.2d 527, 530 (Ct.App.2002).

Section 38–77–160 states in pertinent part:

Such carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute.... If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage.

■ Nowhere in the statute is there language that limits **basic** UIM coverage to an insured vehicle. To the contrary, the statute plainly allows coverage when none of the insured's vehicles is involved in the accident. To say that the legislative intent was to exclude basic UIM coverage if an insured's vehicle is involved in an accident but include coverage when

none of the insured's vehicles is involved in an accident is absurd, absent specific language to that effect. In construing a statute, the court looks to its language as a whole in light of its manifest purpose. *Simmons v. City of Columbia,* 280 S.C. 163, 165, 311 S.E.2d 732, 733 (1984). The manifest purpose of section 38–77–160 is to provide coverage in the event that the insured sustains damages in excess of the liability limits carried by the at fault motorist.

 Nationwide's argument that the emphasized language of section 38–77–160 excludes coverage because Burgess had no UIM coverage on the motorcycle is without merit based upon our finding that UIM coverage is personal and portable. Moreover, our supreme court said in *Howard,* when construing the emphasized provision of 56–9–831 as it pertains to UM coverage, that such coverage was nowhere limited to the use of the insured vehicle.[7] That holding is instructive here.

Nationwide also argues that since Burgess's UIM coverage exceeded the basic UIM coverage of $15,000, his coverage is excess and therefore his claim is precluded by the emphasized language in section 38–77–160.[8] However, section 38–77–160 does not limit *basic* UIM in any way; all limitations specifically reference *excess* UIM. Had the legislature intended to limit basic UIM coverage, it could have easily done so by simply omitting the word "excess." To argue that Burgess should be denied UIM coverage because he purchased too much is absurd.

### UIM Policy Endorsement

 Nationwide next argues that its UIM endorsement precludes Burgess's recovery of UIM benefits because the motorcycle had no UIM coverage. Nationwide's endorsement states, in pertinent part, "[t]he amount of coverage applicable

---

7. Section 56–9–831 was the predecessor to section 38–77–160. Although the section has been amended and recodified as section 38–77–160, the pertinent emphasized language is unchanged.

8. Nationwide offers no authority in support of its position. Nationwide concedes that South Carolina's reported cases with similar facts are not directly on point but argues the inferences from those cases supports its position. Again, each of the cases raised by Nationwide concerns stacking.

under this policy shall be the lesser of the coverage limits under this policy or the coverage limits on the vehicle involved in the accident."

Nationwide's endorsement language is far more restrictive than the language in section 38–77–160. Nationwide excludes the recovery of basic UIM whereas section 38–77–160 merely allows an insurer to limit the amount of recovery of excess UIM. The statute does not allow an insurer to limit or exclude basic UIM in any way. An insurance policy issued pursuant to a statute may give more coverage than the statute requires but not less. *Belk v. Nationwide Mut. Ins. Co.*, 271 S.C. 24, 244 S.E.2d 744 (1978). Once UIM is offered and accepted, the coverage cannot be retracted. *See Gambrell v. Travelers Ins. Cos.*, 280 S.C. 69, 72, 310 S.E.2d 814, 816 (1983).

Section 38–77–160 governs the application of UIM coverage. It applies to every policy as if embodied therein, and inconsistent insurance policy provisions are void. *State Farm Mut. Ins. Co. v. Gunning*, 340 S.C. 526, 532 S.E.2d 16 (2000). Nationwide's endorsement exceeds the limitations allowed by section 38–77–160 and is therefore inconsistent with our public policy.

Moreover, in *State Farm Mut. Ins. Co. v. Horry*, 304 S.C. 165, 403 S.E.2d 318 (1991), our supreme court expressly approved this court's opinion in *Purvis v. State Farm Mut. Ins. Co.*, 304 S.C. 283, 403 S.E.2d 662 (Ct.App.1991) which declared South Carolina to be an "excess" UIM coverage state. The court went on to say that "excess" UIM coverage "provides benefits to an insured under his own policy *at any time* the at fault drivers liability coverage is less than the amount of the claimants actual damages." *Horry*, 304 S.C. at 169, 403 S.E.2d at 320 (emphasis added).[9] The court did not require that the vehicle involved in the accident carry UIM coverage.

9. The phrase "excess UIM coverage" as used in *Horry* is not synonymous with the word "excess" as used in § 38–77–160. In § 38–77–160 the word excess refers to an amount of coverage greater than the basic amount of $15,000. In *Horry* the phrase refers to a type of underinsurance coverage theory, *i.e.*, "excess UIM" or "reduction UIM."

## CONCLUSION

The trial court erred when it concluded that Burgess was entitled to $15,000 UIM coverage from the at home vehicles because he had $15,000 liability coverage on the motorcycle involved in the accident. Burgess was entitled to $15,000 UIM coverage because that is the statutory minimum coverage and Burgess had at least that amount on the at home vehicles. However, because we find that UIM coverage is personal and portable, and because we find that section 38–77–160 does not allow the exclusion or restriction of basic UIM coverage, we affirm the trial court's decision as modified.

**AFFIRMED AS MODIFIED.**

HEARN, C.J., and ANDERSON, J., concur.